STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-20

J.P.

VERSUS

C.E.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 09-C-5092-D
HONORABLE A. FRANK MCGEE, DISTRICT JUDGE PRO TEMPORE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and J. David Painter, Judges.

REVERSED AND REMANDED.

J.P.
830 Belle Drive
Breaux Bridge, LA 70517
(337)315-9503
PLAINTIFF/APPELLANT
        In Proper Person

Kenneth R. Martinez
State Of Louisiana
Department of Children and Family Services
116 S.W. Railroad Ave., Suite B
Ville Platte, LA 70586
(337)363-6693
COUNSEL FOR DEFENDANT/APPELLEE
        State of Louisiana
        Department of Social Services

**Bridgette A. Soileau Gaudin**
**Attorney at Law**
**100 W. Bellevue Street**
**Opelousas, LA 70507**
**(337)948-3818**
**COUNSEL FOR DEFENDANT/APPELLEE**
     **Curator for N.P.**

**PETERS, J.**

J.P. initially brought this action seeking paternity testing and named C.E., the biological mother of the child in question, as the sole defendant. The State of Louisiana, Department of Social Services, Support Enforcement Services (the state), intervened in the suit. J.P. now appeals from a trial court judgment sustaining a peremptory exception of prescription in favor of the state. For the following reasons, we reverse the trial court judgment and remand this matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

The minor child at issue in this litigation, N.P.,[1] was born in Lafayette, Louisiana, on November 8, 1999. His birthmother was C.E., and soon after N.P.'s birth, J.P. executed an affidavit certifying that he was N.P.'s biological father. N.P.'s Certificate of Live Birth lists J.P. as the biological father.

On September 22, 2009, J.P. filed a Petition for Paternity Testing, naming C.E. as defendant. In the petition, J.P. alleged the following concerning his right to paternity testing:

3.

Plaintiff shows that in accordance with La[.] C.C. art 198 that the Defendant, [C.E.] did in bad faith deceive the Plaintiff into believing that he was the biological farther [sic] of her child, [N.P.]

4.

Further, after learning that the Defendant practices black magic, spells and curses, the Plaintiff discovered that the Defendant was working black magic in their relationship through her religious practice of witchcraft.

---

[1] The initials of the child and her parents are used to protect the identity of the minor child. Uniform Rules—Courts of Appeal, Rules 5-1, 5-2.

5.

The Plaintiff shows that he was warned by other men that the Defendant would produce an authentic looking document that claimed she was to inherit the sum of $5 million dollars. She would use this document to entice men into a long term relationship.

6.

The Plaintiff shows that as a result of years of deceitful practices in the form of witchcraft by the Defendant that he has suffered damages in the form of paying child support, financial distress and ridicule by his peers for being suckered into believing that [N.P.] was the Plaintiff's biological son.

Based on these allegations, J.P. requested that C.E. be ordered to submit N.P. for paternity testing in order to determine whether he was N.P.'s biological father.

The state, rather than C.E., responded to the petition by filing an intervention naming both J.P. and C.E. as defendants in intervention. In its intervention, the state asserted that it was a necessary and indispensible party to this action as it had obtained a prior judgment of child support in favor of N.P. and against J.P., effective September 15, 2001. The trial court granted the state's right to intervene by an order dated October 30, 2009. On the same day it filed the intervention, the state answered J.P.'s petition.

After a number of other pleadings were filed addressing discovery issues and service issues on C.E., J.P. amended his petition by a pleading filed December 21, 2010. Among other changes, the amendment replaced the original Paragraphs 3 through 6 with the following:

3.

Defendant, [C.E.], and petitioner, [J.P.], are not married and have never been married.

4.

This court has jurisdiction over the status in question based on La. Code Civ. Proc. art. 10(A)(8). This court may exercise personal

2

jurisdiction over the defendant, [C.E.], pursuant to La. R.S. 13:3201(A)(7).

5.

Service of process of the original *Petition for Paternity Testing* was made on the non-resident defendant by as required by La. R.S. 13:3204(A), as evidence [sic] by the documents attached hereto as Exhibit A, *in globo*.

Alternatively, if the court finds that service of process cannot be made on the non-resident defendant by registered or certified mail or by actual delivery, then petitioner requests that the court appoint an attorney at law to represent the defendant pursuant to La. Code Civ. Proc. art. 5091 and that service of process be made on the attorney so appointed.

6.

Pursuant to La. Code of Civ. Proc. art. 5091.1, petitioner requests that the court appoint an attorney to represent the child whose status is at issue.

The deletion and replacement of the original paragraphs had the effect of eliminating the original reasons for J.P.'s request for paternity testing.

On January 6, 2010, J.P. filed a Motion for Hearing to Close Case. J.P. alleged in his motion that C.E. was served with notice of his petition by the St. Landry Clerk of Court's reissue of its long arm service via the United State Postal Service (USPS). The petition was mailed to C.E.'s address in Houston, Texas. The USPS's track and confirm showed that the document was unclaimed in Houston on July 12, 2010, but that it was delivered on July 17, 2010, in Breaux Bridge, Louisiana. However, after a hearing on the motion, the trial court denied J.P.'s request to close the paternity case.

After more proceedings directed toward service on C.E., on May 2, 2011, the state filed exceptions of non-joinder of a necessary and indispensible party, prescription, no cause of action, prematurity, vagueness, and lack of service of process on C.E. J.P. responded to this filing by again amending his petition. This

amendment, which was filed on May 27, 2011, again replaced previous paragraphs, including Paragraphs 6 and 7 which relate directly to the issue of knowledge. These paragraphs now read as follows:

6.

Pursuant to La. Code of Civ. Proc. art 2004, a fraudulent judgment, the petitioner request [sic] that DNA testing be administered in this matter in order to further substantiate fraudulent allegations that [C.E.] knowingly and fraudulently deceived [J.P.] into signing the acknowledgement and birth certificate of her minor child by having [J.P.] believe that he was the father.

7.

Plaintiff has interviewed ex co-workers and personal associates of [C.E.] on or about September 2009 who made [J.P.] aware that the minor child was not his child and that [C.E.] did not know who was the father of her child due to the numerous sexual relationships that she had at the time of conception of the minor child in question.

The state's exceptions were tried on October 31, 2011. At the end of that hearing, the trial court granted judgment maintaining the state's peremptory exception of prescription. The judgment ultimately executed by the trial court on November 14, 2011, constituted a form judgment apparently used by the state in support cases, which gave the trial court a number of paragraphs to choose from and complete. In this case, the trial court marked a box under the title "**OTHER:**" and inserted the following language:

Exceptions dismissing petition is granted on the exception of prescription and petitioner failed to establish a substantial likelihood [of non-parentage] due to duress, fraud, or otherwise pursuant to R.S. 9:406.

J.P. appeals from this judgment, raising three assignments of error:

1. Whether the court can allow the state's attorney and intervener [sic] seemingly represents the defendant-appellee in litigation, proceed to litigate the case with the defendant-appellee absent from the hearing by having the case dismissed on exceptions and[;]

2. Whether the trial court erred by not acknowledging the 2nd Amended Petition for Paternity Testing And Annulment Of Acknowledgment which cured deficiencies raised by the intervener's [sic] exceptions and[;]

3. Whether the trial court erred in holding a default confirmation pleading for over 45 days without ruling on the matter at the hearing because the judge kept the pleading on his desk[.]

## OPINION

### *Assignment of Error Number One*

In his first assignment of error, J.P. argues that the trial court erred in allowing the state, as an intervenor, to litigate this matter in lieu of the absent C.E. Specifically, he asserts that the state should not have been allowed to raise exceptions in his proceedings against C.E. We find no merit in this argument.

Louisiana Revised Statutes 9:406(B) provides that the "office of children and family services, support enforcement services of the Department of Children and Family Services" is a necessary party to an action for the revocation of an authentic act of acknowledgment. In this instance, the state had obtained a prior child support order against J.P. in another proceeding and, thus, is a necessary party to this present matter. Further, as the state's involvement in this matter is a demand incidental to the principal demand, it is entitled to plead any exception available to the defendant in the principal action. La.Code Civ.P. art. 1034. Accordingly, we find no error by the trial court in this instance.

### *Assignment of Error Number Two*

In this assignment of error, J.P. asserts that the trial court erred in not acknowledging his second amending petition which, he asserts, cured all of the issues raised by the state's exceptions. We construe this argument to suggest that the trial court erred in granting the exception of prescription and dismissing his suit.

Louisiana Revised Statutes 9:405 provides, "In child support, custody, and visitation cases, the acknowledgement of paternity by authentic act is deemed to be a legal finding of paternity and is sufficient to establish an obligation to support the child and to establish visitation without the necessity of obtaining a judgment of paternity." A person who acknowledges paternity of a child by authentic act may revoke that acknowledgement for any reason if the revocation takes place within sixty days of the acknowledgement. La.R.S. 9:406(A). Otherwise, a revocation may only be obtained upon petitioning the trial court pursuant to La.R.S. 9:406(B). That statute currently provides, in part:

> (1) If the notarial act of acknowledgment has not been revoked within sixty days in accordance with the provisions of Subsection A of this Section, a person who executed an authentic act of acknowledgment may petition the court to revoke such acknowledgment only upon proof, by clear and convincing evidence, that such act was induced by fraud, duress, material mistake of fact or error, or that the person is not the biological parent of the child.

> (2) The mover shall institute the proceeding by ordinary process, within a two-year period commencing with the execution of the authentic act of acknowledgment of paternity, in a court of competent jurisdiction upon notice to the other party who executed the notarial act of acknowledgment and other necessary parties including the office of children and family services, support enforcement services of the Department of Children and Family Services. If the court finds based upon the evidence presented at the hearing that there is substantial likelihood that fraud, duress, material mistake of fact or error existed in the execution of the act or that the person who executed the authentic act of acknowledgment is not the biological father, then, and only then, the court shall order genetic tests pursuant to R.S. 9:396. Nothing herein shall preclude the mover from presenting any other evidence as a substitute for the genetic tests if it is not possible to conduct such tests.

However, La.R.S. 9:406 was amended by Acts 2008, No. 533§ 1, effective August 15, 2008. Prior to that amendment, La.R.S. 9:406(B), which was added by Acts 2006, No. 344 § 4, effective June 13, 2006, provided:

> At any time, a person who executed an authentic act of acknowledgment may petition the court to rescind such

6

acknowledgment only upon proof, by clear and convincing evidence, that such act was induced by fraud, duress, material mistake of fact or error, or that the person is not the biological parent of the child.

Thus, between June 13, 2006 and August 15, 2008, a person seeking to revoke an acknowledgment of paternity, created by authentic act, could do so at any time. In *State ex. rel. AC v. MD*, 10-1799 (La.App. 1 Cir. 6/17/11), 70 So.3d 159, the first circuit held that the provisions of La.R.S. 9:406(B), as amended in 2008, could only have prospective application. We agree with that holding. Thus, the provisions of La.R.S. 9:406(B), providing a two-year prescriptive period for the commencement of an action to revoke an authentic act of acknowledgment only applies prospectively from August 15, 2008.

In this instance, J.P. filed his original petition requesting paternity testing on September 22, 2009. Although he did not formally request revocation of his prior acknowledgment of N.P. in his petition, the effect of his petition is the same. It was not until he amended his petition for the second time on May 27, 2011, that J.P. first requested that the prior acknowledgment be nullified. However, La.Code Civ.P. art. 1153 provides that "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleadings, the amendment relates back to the date of filing the original pleading." Furthermore, "[e]very pleading shall be so construed as to do substantial justice." La.Code Civ.P. art. 865. Because J.P.'s May 27, 2011 petition relates back to September 22, 2009, we find that J.P.'s request to annul his prior authentic act of acknowledgment was timely filed within the two years of the amendment of La.R.S. 9:406(B). Accordingly, we find that the trial court incorrectly sustained the state's peremptory exception of prescription.

7

We also find that the trial court erred in its finding that J.P. had failed to "establish a substantial likelihood [of non-parentage] due to duress, fraud, or otherwise pursuant to R.S. 9:406." The various exceptions filed by the state were the only issues before the trial court on October 31, 2011.

## *Assignment of Error Number Three*

In his last assignment of error, J.P. argues that the trial court erred by not taking up his default confirmation during the hearing on the exceptions. For the same reason that the trial court erred in making factual findings concerning J.P.'s ability to be successful at trial, we find that the trial court did not err in not proceeding with the default confirmation. The only issue before the trial court at this hearing was the state's exceptions. We find no merit in this assignment of error.

## DISPOSITION

For the foregoing reasons, we reverse the trial court judgment rendered in favor of the State of Louisiana, Department of Social Services, Support Enforcement Services, and against J.P. dismissing his suit. We remand the matter to the trial court for further proceedings. We assess the costs of this appeal equally between J.P. and the State of Louisiana, Department of Social Services, Support Enforcement Services, with the amount to the state in the amount of $892.25, as required by La.R.S. 13:5112.

**REVERSED AND REMANDED.**

8